UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO LIMON, an individual, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CIRCLE K STORES INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 1:18-cv-01689-SKO<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT<br><br>(Doc. 27) |

This matter is before the Court on Defendant Circle K Stores, Inc. ("Circle K")'s motion for summary judgment or, in the alternative, partial summary judgment, filed November 20, 2019. (Doc. 27.) Plaintiff Ernesto Limon filed his opposition to the motion on December 4, 2019 (Doc. 33), and Circle K filed its reply on December 11, 2019. (Doc. 34.) The Court reviewed the parties' papers and all supporting material and found the matter suitable for decision without oral argument pursuant to Local Rule 230(g). The hearing set for December 18, 2019, was therefore vacated. (Doc. 35.)

Having considered the parties' briefing, and for the reasons set forth below, the Court shall deny the motion.

///

1

## I. BACKGROUND

**A. Factual Background**

On June 21, 2018, Plaintiff completed a Circle K Employment Application. (Doc. 33-1, Statement of Undisputed Material Facts ("SUMF") at 3; Doc. 27-4, Deposition of Ernesto Limon ("Limon Dep."), Ex. 4.) In the Application, when asked whether he "[w]ould . . . be willing to submit to a background check, prior to being hired," Plaintiff checked "yes." (*Id*. at 4; Limon Dep. 86:12–25 and Ex. 4.) Plaintiff testified at his deposition that when he checked "yes" in the employment application, he knew he was informing Circle K of his willingness to submit to a background check prior to being hired. (SUMF at 5; Limon Dep. 87:1–7.)

In conjunction with the Employment Application, Plaintiff also signed a document titled "Fair Credit Reporting Act (FCRA) Consent." (SUMF at 6; Limon Dep. 89:7–90:12 and Ex. 5.) The FCRA Consent informed Plaintiff that a consumer report containing his credit history, criminal records, education history, and other information would be obtained for employment purposes. (Limon Dep. Ex. 5.) The FCRA Consent authorized Circle K to obtain Plaintiff's consumer report for "legally authorized and mandated purposes." (*Id*.) It also authorized any person or entity contacted by Circle K to provide Plaintiff's consumer report and released "any such person or entity from liability for furnishing such information." (*Id*.; SUMF at 10.) Plaintiff checked a box on the FCRA Consent confirming his electronic signature on it and his "agreement to [the document's] use in such manner." (*Id*.; Limon Dep. 89:7–90:12.) He also checked a box on the FCRA Consent to request a copy of the consumer report, and he received a copy of the report on June 28, 2018. (*Id*.; Limon Dep. 90:24–92:8 and Ex. 6; SUMF at 9.) Plaintiff was thereafter hired by Circle K as a customer service representative. (Limon Dep. 35:21–22.)

Plaintiff states in his declaration that he was "confused by the language" in Circle K's FCRA Consent form and "did not understand everything in the form." (Doc. 33-4, Declaration of Ernesto Limon ("Limon Decl.") ¶ 7.) Plaintiff explains that he "was confused and did not understand what [he] was authorizing because the form language mentioned language about release of liability and multiple other states that were not applicable to me." (*Id*. ¶ 8.) He states that he "did not understand that by signing [he] was waiving [his] rights in relation to Circle K and any

other person or entity providing background check information." (*Id.* ¶ 9.) Plaintiff further testified in his deposition that "a certain portion of the application contract . . . gets a little confusing and misleading, where . . . by signing that portion, it pretty much would waive a certain right or release." (Limon Dep.114:2–7.)

**B.      Procedural Background**

Seeking to represent a class of similarly situated applicants, Plaintiff brings two claims under the Fair Credit Reporting Act ("FCRA"): (1) for failure to provide proper disclosure that a consumer report may be obtained in violation of 15 U.S.C. § 1681b(b)(2)(A)(i), Doc. 1 ("Compl.") ¶¶ 51–56, and (2) for failure to obtain proper authorization to obtain such a report in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii), Compl. ¶¶ 57–62. Specifically, Plaintiff alleges that Circle K's inclusion of the liability release in its FCRA Consent form violated the statutory requirement that the disclosure document consist "solely" of the disclosure, which thereby rendered his written authorization invalid, Compl. ¶¶ 21–22, 25–24. *See* 15 U.S.C. §§ 1681b(b)(2)(A)(i), (ii). Plaintiff contends that Circle K's purported violations were willful and that he and the putative class are therefore entitled to statutory and punitive damages under 15 U.S.C. § 1681n(a)(1)(A). (Compl. ¶¶ 33, 37, 53, 59, 60.) He also seeks attorney's fees and costs under the statute. (*Id.* ¶¶ 21–22, 56, 62.)

Circle K moves for summary judgment, or in the alternative, partial summary judgment, on three grounds: (1) Plaintiff cannot establish Article III standing; (2) Circle K's alleged statutory violations were not willful as a matter of law; and (3) Plaintiff cannot prevail on his second FCRA claim because he provided Circle K a signed written authorization. (Doc. 27.)

## II.      LEGAL STANDARDS FOR SUMMARY JUDGMENT

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a

claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim ...") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F.Supp.2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors*

*Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### III. DISCUSSION

**A. Evidence Before the Court**

In evaluating a motion for summary judgment, the Court examines the evidence provided by the parties, including pleadings, deposition testimony, answer to interrogatories, and admissions on file. *See* Fed. R. Civ. P. 56(c). On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Court has reviewed each of the evidentiary objections identified by the parties related to the motion and opposition briefing. (*See* Doc. 33-5; Doc. 34-2.) However, the Court declines to address each of the individual objections identified by the parties. *See Capitol Records, LLC v. BlueBeat, Inc*., 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010) (observing "it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised").

To the extent Circle K objects to evidence on the grounds of relevance (*see* Doc. 34-2), such objections are inappropriate because the Court must determine whether a fact is relevant and material as part of "the summary judgment standard itself." *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). To that end, any evidence deemed irrelevant was

1 omitted from the Court's summary of the facts and contentions above. Further, the Court, as a matter of course, has not factored into its analysis any statements identified by either party that are speculative or represent a legal conclusion. *See Burch*, 433 F. Supp.2d at 1119 ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment.") (citation omitted, emphasis in original). Thus, the Court has relied upon only evidence it has deemed admissible. In addition, the Court will consider only those facts that are supported by admissible evidence and to which there is no genuine dispute.

**B.     Plaintiff Has Established Article III Standing**

   **1.     Applicable Law**

      **a.     *Spokeo***

"[T]he irreducible constitutional minimum of [Article III] standing" contains three elements, namely, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The burden of proof for establishing standing, which rests with the party seeking federal jurisdiction, must be met with adequate support at each stage of the litigation. *Lujan*, 504 U.S. at 561. In particular, at the summary judgment stage, "the plaintiff can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" to demonstrate standing. *Id.*

The Supreme Court has described the "injury in fact" requirement, at issue in this case, as the "'[f]irst and foremost' of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560).

In *Spokeo*, the Court emphasized that concreteness and particularization are separate requirements. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and

6

individual way.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). Even where this requirement is met, however, the injury-in-fact requirement will not be satisfied unless the injury is also concrete. *Id*. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. (citing BLACK'S LAW DICTIONARY 479 (9th ed. 2009)). An injury may be "concrete" even if it is intangible, the *Spokeo* Court explained, and "in determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id*. at 1549. With respect to history, the Court said, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775–777 (2000)). The judgment of Congress is also "instructive and important" because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id*. Thus, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id*. (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)).

Nonetheless, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. Thus, while a procedural violation "can be sufficient in some circumstances to constitute injury in fact," for example, where there is a "risk of real harm," a "*bare* procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III." *Id*. (emphasis added).

The Court in *Spokeo* addressed the injury-in-fact requirement in the context of an alleged FCRA violation. The plaintiff, Robins, alleged that *Spokeo*, a "people search engine," had violated Section 1681 of the FCRA by providing inaccurate information about him in a generated report. *Id*. at 1544. Specifically, it was alleged that "[a]t some point in time, someone (Robins' complaint does not specify who) made a Spokeo search request for information about Robins, and Spokeo trawled its sources and generated a profile. By some means not detailed in Robins' complaint, he became aware of the contents of that profile and discovered that it contained inaccurate

7

information." *Id*. at 1546.

The Ninth Circuit held that Robins had adequately alleged an injury in fact because he had alleged a "particularized" injury, namely, violation of his statutory rights under the FCRA, but the Court found that the Ninth Circuit's analysis was incomplete because it had failed to consider whether that injury satisfied the "concreteness" requirement. *Id*. at 1545, 1548. The Court remanded the case for consideration of whether Robins had met that requirement, taking "no position as to whether the Ninth Circuit's ultimate conclusion—that Robins adequately alleged an injury in fact—was correct." *Id*. at 1550. While the Court did not reach the question of whether the plaintiff's allegations were sufficient to demonstrate a concrete injury, it offered examples of FCRA violations that likely would not satisfy the concreteness requirement, opining as follows:

> On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id*. at 1550.

### b. *Syed*

In *Syed v. M-I, LLC*, the Ninth Circuit applied the test for standing set forth in *Spokeo* to the FCRA requirements at issue in this case. 853 F.3d 492, 499 (9th Cir. 2017). Section 1681b(b), which governs consumer reports obtained for employment purposes, contains a disclosure requirement, which "creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process." *Id*. at 499 (citing 15 U.S.C. § 1681b(b)(2)(A)(i)). It also contains an authorization requirement, which "creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when

8

applicants are deprived of their ability to meaningfully authorize the credit check." *Id*. (citing 15 U.S.C. § 1681b(b)(2)(A)(ii)). The Ninth Circuit explained that Section 1681b(b)(2)(A) "furthers Congress's overarching purposes of ensuring accurate credit reporting, promoting efficient error correction, and protecting privacy." *Id*. at 496-497 (citation omitted). It continued, "in addition to securing job applicants' privacy rights by enabling them to withhold authorization to obtain their consumer reports, the provision promotes error correction by providing applicants with an opportunity to warn a prospective employer of errors in the report before the employer decides against hiring the applicant on the basis of information contained in the report." *Id*. Thus, it concluded that "[b]y providing a private cause of action for violations of Section 1681b(b)(2)(A), Congress has recognized the harm such violations cause, thereby articulating a 'chain [ ] of causation that will give rise to a case or controversy.'" *Id*. at 499 (citing *Spokeo*, 136 S. Ct. at 1549 (quoting Lujan, 504 U.S. at 580 (1992) (Kennedy, J., concurring))).

In *Syed*, the plaintiff alleged that the authorization he had signed when he commenced employment, which authorized his employer to obtain consumer reports about him for employment purposes, violated the FCRA because it also included a liability waiver, in violation of a requirement under the FCRA that a disclosure statement should only include the required disclosures. *Id*. at 497-498 (citing 15 U.S.C. § 1681b(b)(2)(A)). He further alleged that he "discovered [the employer's] violation(s) within the last two years when he obtained and reviewed his personnel file from [his employer] and discovered that [the employer] had procured and/or caused to be procured a 'consumer report' regarding him for employment purposes based on the illegal disclosure and authorization form." *Id*. at 500. The court found that for pleading purposes:

> This allegation is sufficient to infer that Syed was deprived of the right to information and the right to privacy guaranteed by Section 1681b(b)(2)(A)(I)–(ii) because it indicates that Syed was not aware that he was signing a waiver authorizing the credit check when he signed it. Drawing all reasonable inferences in favor of the nonmoving party, we can fairly infer that Syed was confused by the inclusion of the liability waiver with the disclosure and would not have signed it had it contained a sufficiently clear disclosure, as required in the statute.

*Id*. at 500–501. For this reason, the court held, the plaintiff had adequately alleged standing under

Article III. *Id*. at 501 (citing *Thomas v. FTS USA, LLC*, 193 F.Supp.3d 623, 628–638 (E.D. Va. 2016)). The court noted in a footnote, however, that "what suffices at the Rule 12(b)(6) stage may not suffice at later stages of the proceedings when the facts are tested." *Id*. at 499 n.4.

### 2. Analysis

"Under *Syed*, a plaintiff who is confused by a disclosure form, does not understand that he is authorizing his employer to obtain a consumer report, and nevertheless has such a report procured suffers a concrete injury to the plaintiff's rights to information and privacy sufficient to establish Article III standing." *Brown v. Core-Mark Int'l, Inc*., No. 18-CV-07451-JCS, 2019 WL 2076708, at *4 (N.D. Cal. May 10, 2019). *See also Limson v. Bridge Prop. Mgmt. Co*., No. 19-CV-02795-JCS, 2019 WL 4645174, at *12 (N.D. Cal. Sept. 24, 2019) ("District courts that have applied *Spokeo* to FCRA claims based on disclosures that are alleged to be unclear or otherwise out of compliance with the FCRA as to the form of the disclosure have generally held that in order to have standing the consumer must allege some actual harm, such as being confused or misled by the improperly formatted disclosure.") (internal quotations omitted). Plaintiff has met that standard: he has provided evidence in the form of his declaration and deposition testimony that he was confused by the liability release in Circle K's FCRA Consent form, did not understand that by signing the FCRA Consent he was authorizing Circle K to obtain his background check, and nevertheless had a background check report procured.[1] (Limon Decl. ¶¶ 7–9; Limon Dep. 90:24–92:8, 114:2–7.)

*Ruiz v. Shamrock Foods Co.* and *Pitre v. Wal-Mart Stores*, cases that Circle K cites granting summary judgment on FCRA claims for lack of standing, are both distinguishable.[2] In *Ruiz*, the

---

[1] Plaintiff asserts for the first time in his opposition papers that he was also confused about the inclusion of "references to other states not applicable to him" in Circle K's FCRA Consent form. (*See* Doc. 33 at 6–7; Limon Decl. ¶ 8.) Plaintiff did not make such allegation in his complaint and cannot now expand his FRCA claims. *See Padron v. Lara*, No. 1:16-CV-00549-SAB, 2018 WL 2213462, at *3 (E.D. Cal. May 11, 2018) ("As the complaint frames the issues on summary judgment and "the issues in the complaint guide the parties during discovery and put the defendant on notice of what evidence is necessary to defend against the allegations, courts routinely hold that a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blindside the defendant with a new legal issue after the bulk of discovery has likely been completed.'") (quoting *Cole v. CRST, Inc.*, 150 F.Supp.3d 1163, 1169 (C.D. Cal. 2015)). The Court therefore disregards Plaintiff's newly-raised argument and evidence for the purposes of deciding Circle K's summary judgment motion.

[2] *Lee v. Hertz Corporation*, a case that Circle K cites dismissing under Rule 12(b)(6) an FCRA claim for lack of standing, predates *Syed* and is also distinguishable from the facts at hand. Case No. 15-CV-04562-BLF, 2016 WL 7034060 (N.D. Cal. Dec. 2, 2016). There, the plaintiffs did "not allege that the disclosures they received prevented

court found that, unlike *Syed*, the plaintiffs "lack[ed] facts to allow the [c]ourt to make an inference that they were confused by the inclusion of a liability waiver with the disclosure or would not have signed the authorization form had it contained a sufficiently clear disclosure." Case No. 2:17-cv-06017-SVW-AFM, 2018 WL 5099509, at *5 (C.D. Cal. Aug. 22, 2018). In *Pitre*, that court found that the plaintiffs "consented to the background check process." Case No. SA CV 17-01281-DOC-DFMx, 2019 WL 5294397, at *7 (C.D. Cal. Oct. 18, 2019). Here, while it is undisputed that Plaintiff informed Circle K of his willingness to submit to a background check at some point prior to being hired, *see* SUMF at 4–5, Plaintiff has shown that, at the time his consent to the background was actually sought by Circle K, he was confused by the inclusion of the liability waiver in the FCRA Consent form such that he was unaware that by signing it he was consenting to the background check, *see* Limon Decl. ¶¶ 7–9; Limon Dep. 114:2–7.[3] *Cf. Limson v. Bridge Prop. Mgmt. Co.*, Case No. 19-cv-02795-JCS, 2019 WL 4645174, at *13 (N.D. Cal. Sept. 24, 2019) (finding no standing to bring a claim under Section 1681d(a)(1) of the FCRA, which requires disclosures to consumers must be made "clearly and accurately," where the plaintiffs did "not allege that they misunderstood the authorization that they signed, or that they agreed to the release of their information only because they were confused by the disclosures" and therefore they "consented to the release of their information."). Moreover, to the extent Circle K suggests that in order to demonstrate standing Plaintiff must establish, in addition to his confusion, that he would not have signed the FCRA Consent form had it omitted the liability waiver, such is contrary to case law, including that on which Circle K relies. *See, e.g., Pitre*, 2019 WL 5294397, at *6 (observing that "[w]hen job applicants have not claimed (1) that the disclosure forms had impaired their understanding, *or* (2) that, had the disclosure complied with the FCRA, they would not have authorized the background check, courts have determined that the alleged injury, per *Spokeo*, did

---

them from understanding that they were authorizing Hertz to procure a background report." *Id*. at *5. As set forth above, here Plaintiff not only alleges, but submits evidence that he was confused by Circle K's FCRA Consent form and did not understand that Circle would be requesting a background check.

[3] *Ruiz* is further distinguishable because the only purported evidence of confusion in that case consisted of "sham affidavits," which "directly contracted" the plaintiffs' deposition testimony and "lack[ed] evidentiary value." *Ruiz*, 2018 WL 5099509, at *5 and n.4. Here, there is no contradiction between Plaintiff's deposition testimony that he was willing to submit to a background check prior to being hired by Circle K (Limon Dep. 86:12–87:7) and the statements in his declaration that he was confused by the form that Circle K used to procure his authorization of a background check (Limon Decl. ¶¶ .

11

not exceed a bare procedural violation, and did not support standing.") (citing *Williams v. Nichols Demos, Inc*., Case No. 5:17-cv-7101-EJD, 2018 WL 3046507, at *5 (N.D. Cal. June 20, 2018)) (emphasis added); *Ruiz*, 2018 WL 5099509, at *5 ("Plaintiffs lack facts to allow the Court to make an inference that they were confused by the inclusion of a liability waiver with the disclosure *or* would not have signed the authorization form had it contained a sufficiently clear disclosure.") (emphasis added). *See also, e.g., Rotor v. Signature Consultants, LLC*, Case No. 18-cv-07526-JST, 2019 WL 3246535, at *4 (N.D. Cal. July 19, 2019) ("Applying *Syed* to alleged violations of that same provision, numerous courts from this district have concluded that Syed 'requires some allegation of actual harm, e.g., that plaintiff was 'confused' by the disclosure *or* that she would not have signed the authorization had it been presented in a FCRA-compliant format.'") (citations omitted) (emphasis added); *Williams v. Vitas Healthcare Corp. of Cal*., No. 18-cv-02096-JSW, 2018 WL 7253633, at *3 (N.D. Cal. Aug. 6, 2018) (finding no concrete injury where plaintiff gave "no indication that she was misled by the Forms' format *or* that she would not have signed the Forms if she understood their effect") (emphasis added).

Plaintiff's proffered evidence demonstrates he was confused by the liability waiver in Circle K's FCRA Consent form and did know what he was authorizing a background check when he signed it, such that he was deprived of "the right to information and the right to privacy guaranteed by [FCRA] Section 1681b(b)(2)(A)(i)–(ii)." *See Syed*, 853 F.3d at 499. *See also Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 490 (9th Cir. 2019) ("[T]he invasion of the interest at issue— the right to privacy in one's consumer credit report—confers standing.") (citing *Syed*, 853 F.3d 499–500.) He has therefore set forth "specific facts," *Lujan*, 504 U.S. at 561, showing a concrete injury sufficient to establish Article III standing under *Spokeo*. *Cf. Mitchell v. WinCo Foods, LLC*, 743 F. App'x 889, 889 (9th Cir. 2018) ("To the extent Mitchell argues that she was confused by the FCRA waiver and authorization, Mitchell's pleadings do not allege facts sufficient to support an inference of confusion. The district court therefore correctly concluded that her pleadings failed to establish standing."); *Brown*, 2019 WL 2076708, at *4 (finding a concrete injury where plaintiff's allegations of "confusion regarding the nature of the disclosure and a consumer report obtained without valid authorization" were analogous to *Syed*); *Marchioli v. Pre-Employ.com*,

EDCV 16-2305 JGB (DTBx), 2017 WL 7049527, at *9-10 (C.D. Cal. June 30, 2017) (granting motion to dismiss plaintiff's FCRA claim and distinguishing *Syed* because plaintiff failed to allege that technical violations of Section 1681b deprived him of the ability to understand his rights or meaningfully authorize the procurement of a credit report on him, and therefore failed to adequately allege a plausible nexus between the alleged violation of disclosure and authorization requirements and plaintiff's asserted informational injury). Accordingly, Circle K's motion for summary judgment on the issue of standing is denied.

**C.     Circle K is Not Entitled to Summary Judgment on the Issue of Willfulness**

Plaintiff claims that the inclusion of a liability waiver in Circle K's FCRA Consent form violates Section 1681b(b)(2)(A) of the FCRA. (Compl. ¶ 21, 31, 52.) Plaintiff seeks statutory and punitive damages only, not actual damages. (*Id.* ¶ 54.) Statutory and punitive damages are available under the FCRA only where a defendant "willfully fails to comply" with the statute. 15 U.S.C. § 1681n(a).

The liability waiver at issue reads: "I authorize, without reservation, any person or entity contacted by Circle K Stores Inc. or its agent(s) to furnish the above stated information, and I release any such person or entity from any liability for furnishing such information." (SUMF at 10; Limon Dep. Ex. 5.) Circle K contends that it is entitled to summary judgment because the inclusion of this self-described "limited third-party waiver" in its FCRA Consent form cannot constitute a willful violation of Section 1681b(b)(2)(A) of the FCRA.

As mentioned above, Section 1681b(b)(2)(A)(i) provides that:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless-- (i) a *clear and conspicuous* disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists *solely of the disclosure*, that a consumer report may be obtained for employment purposes.

15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added). "The Supreme Court has clarified that, under Section 1681n, willfulness reaches actions taken in 'reckless disregard of statutory duty,' in addition to actions 'known to violate the Act.'" *Syed*, 853 F.3d at 503 (citing to *Safeco Ins. Co. of*

*America v. Burr*, 551 U.S. 47, 56–57 (2007) (internal citation omitted). A party subject to FCRA does not act in reckless disregard of it "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.*

Circle K contends that, even if it violated the statute by procuring Plaintiff's consumer report, it is entitled to summary judgment because its interpretation of Section 1681b(b)(2)(A) was not so erroneous that its non-compliance was willful within the meaning of Section 1681n. (Doc. 34 at 5–6.) The Court disagrees. In *Syed*, the issue presented was whether the inclusion of a liability waiver in the same document as the FCRA mandated disclosure was a violation of Section 1681b(b)(2)(A). *Syed*, 853 F.3d at 496. The Ninth Circuit found in the affirmative, holding "the FCRA unambiguously bars a prospective employer from including a liability waiver on a disclosure document provided a job applicant pursuant to Section 1681b(b)(2)(A)." *Id.* at 503. The Court further found that because subsection (i) is "not subject to a range of plausible interpretations," an employer who includes a liability waiver on a disclosure document willfully violates that provision "as a matter of law," regardless of their subjective interpretation of the statute. *Id.* at 505.

Circle K had the benefit of guidance from *Syed*, published in 2016, when its FCRA Consent form was given to Plaintiff in June 2018. Significantly, *Syed* emphasized that the construction of the language "solely of the disclosure" in the FCRA "is not a case where we must rationalize two plainly inconsistent subsections, or smooth over a mistake in draftsmanship." *Id.* at 500 (internal quotation marks and citation omitted). "The FCRA's employment disclosure provision 'says what it means and means what it says,'" and the inclusion of extraneous information, such as, for example, "a liability waiver on the same document as a disclosure," was a willful violation of Section 1681b(b)(2)(A)(i). *Id.* at 507. The Ninth Circuit further held that there was no implicit authorization in the language of the FCRA to permit the inclusion of a liability waiver or other extraneous information. *Id.* at 502. A reasonable person who provided a disclosure form to Plaintiff, therefore, "should have interpreted 'solely of the disclosure' to mean only the disclosure required by the FCRA—exclusive of any other kind of disclosure under a different federal law or state law." *Snell v. G4S Secure Solutions (USA) Inc.*, 1:19-cv-00802-LJO-SAB, 2019 WL

6918285, at *5 (E.D. Cal. Dec. 19, 2019).

To support its reading of Section 1681b(b)(2)(A), Circle K argues that *Syed*'s holding is confined to the type of liability waiver issue in that case (which applied to the prospective employer) and does not apply to a limited release of third parties who procure consumer reports on Circle K's behalf, which it describes as "synonymous with authorization." (*See* Doc. 27-1 at 11; Doc. 34 at 6.) Given that this latter type of release "has never been adjudicated" and in view of the lack of "administrative guidance regarding whether this type of release is permissible under the FCRA," Circle K argues that it cannot be deemed to have willfully violated the FCRA. (Doc. 27-1 at 11.)

Circle K reads *Syed* too narrowly. *Syed* held that the FCRA "unambiguously bars the inclusion of a liability waiver on the same document as a disclosure made pursuant to 15 U.S.C. § 1681b(b)(2)(A)." 853 F.3d at 507. Nothing in *Syed* limited the holding to the employment liability waiver at issue in that case, and Circle K has not shown any meaningful distinction between the "limited third party waiver" in the FCRA Consent form and the liability waiver found to violate the FCRA in *Syed*. Indeed, the *Syed* court explicitly rejected the argument, which Circle K makes here, that a liability waiver is "synonymous with authorization." *See* 853 F.3d at 502 (rejecting argument that "a liability waiver is one type of authorization" because such interpretation is "inconsistent with the plain meaning of the term 'authorize.'"). But even if the liability waiver Circle K's FCRA Consent form could be distinguished from that in *Syed*, a "lack of guidance" regarding the propriety of the waiver does not itself render Circle K's interpretation reasonable. *See Syed*, 853 F.3d at 504. Unlike in *Safeco* where the Supreme Court found that while it disagreed with Safeco's position, it "recognize[d] that [Safeco's] reading ha[d] a foundation in the statutory text and a sufficiently convincing justification," *Safeco*, 551 U.S. at 69, Circle K points to no text in the FCRA to support its interpretation of the statute to read "the disclosure" requirement of Section 1681b(b)(2)(A)(i) to include the "limited third-party waiver" contained in its FCRA Consent form.

In the Court's view, *Syed*'s holding is clear.[4] Yet, even if not crystal clear to Circle K, it

---

[4] Other district courts within this Circuit have similarly concluded. *See, e.g., Mitchell v. Winco Foods, LLC*, 379 F. Supp. 3d 1093, 1099 (D. Idaho 2019) (describing the *Syed* decision as "unambiguous").

15

was clear enough that Circle K's "risk of violating the law [was] substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. Circle K could have easily provided the third-party liability waiver to Plaintiff in a separate document, but it took the risk of not doing so. *See, e.g.*, *Marquez v. Bank of America*, Case No. 17-cv-00555-CW, 2018 WL 1948864, at *5 (N.D. Cal., Apr. 25, 2018) (finding that providing a liability release document together with a separate disclosure document does not violate Section 1681b(b)(2)(A)); *Coleman v. Kohl's Dep't Stores, Inc.*, Case No. 15-cv-02588-JCS, 2015 WL 5782352, at *6 (N.D. Cal. Oct. 5, 2015) (holding that presenting an employee with disclosure and authorization document together with a separate release of liability document does not violate Section 1681b(b)(2)(A)). By taking the risk, Circle K must now accept the result of this action.

In sum, whereas *Syed* found willful violation of the standalone requirement based solely on the objectively unreasonable interpretation of "consist[ ] solely of the disclosure," *id.* at 504–05, the facts presented here are much stronger against Circle K. Not only was Circle K's interpretation of Section 1681b(b)(2)(A) objectively unreasonable based on the plain reading of the statutory text, it also had the benefit of guidance from *Syed* to warn "it away from the view it took," *Safeco*, 551 U.S. at 70. For the reasons stated above, the Court denies summary judgment in favor of Circle K on Plaintiff's claim for willful violation of Section 1681b(b)(2)(A).[5]

**D. Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's Second Cause of Action**

Plaintiff's second cause of action alleges that Circle K procured a background check relating to him without proper authorization, in violation of Section 1681b(b)(2)(A)(ii) of the FCRA.[6] (Compl. ¶ 21–22, 58.) Circle K asserts that it is entitled to summary judgment on this cause of action because Plaintiff admits he signed the FCRA Consent form and, under *Cunha v. IntelliCheck, LLC*, this admission "necessarily defeats his claim under Section 1681b(b)(2)(A)(ii)." (Doc. 27-1

---

[5] In his opposition, Plaintiff appears to invite the Court to find affirmatively that Circle K willfully violated the FCRA. (*See* Doc. 33 at 19.) The Court declines to do so at this time. *See Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1110-11 (N.D. Cal. 2016) ("Courts in this circuit have found that '[w]illfullness under the FCRA is generally a question of fact for the jury.'") (internal citations omitted).

[6] That section requires that a consumer authorize in writing the procurement of a consumer report relating to them prior to the procurement of the report for employment purposes. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii).

16

at 12.)

Circle K's reliance on *Cunha* is misplaced. In that case, critically, the plaintiff did <u>not</u> contend that he was confused by the prospective employer's authorization form or he did not know that by signing the form he was authorizing a consumer report. Instead, the plaintiff alleged in his pleading only that he had signed an authorization form. 254 F. Supp. 3d at 1130. Based on these allegations, the court found that plaintiff gave written authorization for the prospective employer to procure a consumer report on him and dismissed his claim under Section 1681b(b)(2)(A)(ii). *Id*.

Here, in contrast to *Cunha*, Plaintiff has put forth evidence that he was "confused by the language" in the FCRA Consent form, "did not understand what [he] was authorizing," and, specifically, that he "did not understand that by signing [he] was waiving [his] rights in relation to Circle K and any other person or entity providing background check information." (Limon Decl. ¶¶ 7–9.) Thus, while it is undisputed that Plaintiff *signed* Circle K's FCRA Consent form (SUMF at 6), Plaintiff's evidence gives rise to a genuine issue of material fact as to whether he in fact *authorized* the background check sought to be procured by the form, *see* 15 U.S.C. § 1681b(b)(2)(A)(ii). *Cf. Speer v. Whole Food Mkt. Group, Inc*., No. 14-CV-3035, 2015 WL 1456981, at *3 (M.D. Fla. Mar. 30, 2015) (concluding at the motion to dismiss stage, that "[t]he inclusion of authorization information in a disclosure document that violates § 1681b(b)(2)(A)(i) also violates § 1681b(b)(2)(A)(ii).")). Summary judgment on Plaintiff's second cause of action is therefore inappropriate.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment or, in the alternative, partial summary judgment (Doc. 27) is DENIED.

IT IS SO ORDERED.

Dated: **January 10, 2020**          /s/ *Sheila K. Oberto*
                                    UNITED STATES MAGISTRATE JUDGE