UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO LIMON, an individual, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CIRCLE K STORES INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 1:18-cv-01689-SKO<br><br>ORDER RE: PLAINTIFF'S MOTION TO COMPEL<br><br>(Doc. 47) |

This matter is before the Court on Plaintiff Ernesto Limon ("Plaintiff")'s "Motion to Compel Further Responses to Plaintiff's Interrogatories and Requests for Production of Documents" (the "Motion to Compel"), filed February 25, 2020. (Doc. 47.) Plaintiff and Defendant Circle K Stores, Inc. ("Defendant" or "Circle K") filed their "Joint Statement" directed to the Motion to Compel, as required by this Court's Local Rule 251, on March 11, 2020. (Doc. 48.) The Court reviewed the parties' papers and all supporting material and found the matter suitable for decision without oral argument pursuant to Local Rule 230(g). The hearing set for March 18, 2020, was therefore vacated. (Doc. 49.)

Having considered the parties' briefing, and for the reasons set forth below, the Motion to Compel shall be granted and the case schedule modified.

1

# I. BACKGROUND

## A. Factual Background

On June 21, 2018, Plaintiff applied to work for and was thereafter hired by Circle K. (Doc. 1. ("Compl.") ¶¶ 23, 26; Doc. 48 at 3.) In connection with his employment application, Plaintiff was required to fill out Circle K's standard disclosure and authorization form ("FCRA Consent Form") permitting it to obtain a consumer report containing his credit history, criminal records, and other information, in order to verify Plaintiff's background and experience. (Compl. ¶ 23; Doc. 48 at 3.) Plaintiff alleges he was confused by the FCRA Consent Form, which contained a release of liability for Circle K's benefit and did not understand that Circle K would be requesting a consumer report. (Compl. ¶ 24; Doc. 48 at 3.) He alleges that Circle K nevertheless subsequently obtained such a report. (Compl. ¶ 26.)

## B. Procedural Background

Seeking to represent a class of similarly situated applicants, Plaintiff brings claims under the Fair Credit Reporting Act ("FCRA") for failure to provide proper disclosure that a consumer report may be obtained in violation of 15 U.S.C. § 1681b(b)(2)(A)(i), Compl. ¶¶ 51–56, and for failure to obtain proper authorization to obtain such a report in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii), Compl. ¶¶ 57–62. (*See also* Doc. 48 at 3.) Specifically, Plaintiff alleges that Circle K's inclusion of the liability release in its FCRA Consent form violated the statutory requirement that the disclosure document consist "solely" of the disclosure, which thereby rendered his written authorization invalid, Compl. ¶¶ 21–22, 25–24. *See* 15 U.S.C. §§ 1681b(b)(2)(A)(i), (ii). Plaintiff seeks to assert these claims on behalf of a proposed class defined as:

> all persons in the United States who filled out Defendant's standard "Fair Credit Reporting Act (FCRA) Consent" form that included an authorization and a liability release clause at any time during the period beginning five (5) years prior to the filing of this Complaint to a date determined by the Court.

(Compl. ¶ 35.) Plaintiff further contends that Circle K's purported violations were willful and that he and the putative class are therefore entitled to statutory and punitive damages under 15 U.S.C. § 1681n(a)(1)(A). (*Id.* ¶¶ 33, 37, 53, 59, 60.) He also attorney's fees and costs under the

statute. (*Id.* ¶¶ 21–22, 56, 62.)

On November 20, 2019, Circle K filed a motion for summary judgment, or in the alternative, partial summary judgment, on three grounds: (1) Plaintiff cannot establish Article III standing; (2) Circle K's alleged statutory violations were not willful as a matter of law; and (3) Plaintiff cannot prevail on his second FCRA claim because he provided Circle K a signed written authorization. (Doc. 27.) The Court denied Circle K's motion for summary judgment on January 10, 2020. (Doc. 36.)

On January 14, 2020, the parties filed a stipulated request to continue the class certification discovery cutoff, then set for January 17, 2020, and briefing schedule "in order to allow the [p]arties an opportunity to complete class certification discovery" following the Court's ruling on Circle K's motion for summary judgment. (Doc. 37.) The Court granted the stipulated request on January 15, 2020, and set the class certification discovery cutoff for February 24, 2020. (*See* Doc. 38.) The Court thereafter entered the parties' stipulated protective order on January 27, 2020. (*See* Doc. 43.)

On February 10, 2020, the parties once again stipulated to continue the class certification discovery cutoff, this time due to the unavailability of Circle K's corporate representative to sit for deposition until March 26, 2020. (*See* Doc. 44.) The Court granted the parties' stipulated request on February 11, 2020 and extended the class certification discovery cutoff to April 9, 2020. (*See* Doc. 45.)

Plaintiff filed the instant Motion to Compel on February 25, 2020. (Doc. 47.) He moves to compel Circle K to produce discovery related to members of the putative class and seeks to enlarge the time to conduct class discovery and seek class certification. (*See* Doc. 48.) Specifically, Plaintiff seeks to compel Circle K to identify and quantify the number of: (a) all persons who completed a FCRA Consent Form containing an "authorization and liability release clause" at any time from December 11, 2013, to the present (Interrogatory Nos. 1 and 3) and (b) all persons who were the subject of a consumer report procured or caused to be procured by Circle K at any time from December 11, 2013, to the present (Interrogatory Nos. 2 and 5). (*See id.* at 5–25.) Circle K contends the discovery requests are inappropriate because Plaintiff cannot make a prima facie showing that he meets the requirements of Fed. R. Civ. P. 23. (Doc. 48 at 7–13.) Circle K further

3

asserts the requests are unduly burdensome and "breach [its] duty to protect the private information of its current and former employees." (*Id*. at 14, 16, 22–23.) Circle K proposes that to the extent the Court finds that Plaintiff is entitled to putative class member discovery, that he be permitted to "only to a proportional sampling of this information that does not exceed contact information for more than 500 putative class members." (*Id*. at 12.) Finally, Circle K opposes Plaintiff's request for an enlargement of time because it is "procedurally defective" and lacks good cause. (*Id*. at 27–29.)

## II.     LEGAL STANDARDS

### A.   Discovery Generally

Federal Rule of Civil Procedure 26(b)(1) provides that parties:

> May obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (citations omitted).

### B.   Discovery in the Class Action Context

As for discovery in the class certification context, "[w]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975). *See also Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)). The Ninth Circuit states that the "advisable practice" for district courts on pre-certification discovery, "is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the

defendant." *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977); *see also Artis*, 276 F.R.D. at 351. Ninth Circuit case law therefore "stand[s] for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery may be warranted." *Vinole*, 571 F.3d at 942. A court does not abuse its discretion in refusing to authorize pre-certification discovery when the plaintiff fails to advance a prima facie showing that the class requirements [*i.e.*, numerosity, commonality, typicality and adequacy of representation] of Rule 23 are satisfied or that "discovery is likely to produce substantiation of class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). A court is not required, however, to find a prima facie showing under Rule 23 prior to authorizing pre-certification discovery. *See Kaminske v. JP Chase Bank N.A.*, No. SACV 09-00918 JVS (RNBx), 2010 WL 5782995, at *2 (C.D. Cal. May 21, 2010) ("[T]here is nothing in *Doninger* and *Mantolete* that suggests that a prima facie showing is mandatory in all cases, and it very well may be the case that courts routinely do not require such a showing. However, it is clear that a court has discretion to decide whether to require the prima facie showing that was approved in *Doninger* and *Mantolete*."); *Robinson v. The Chefs' Warehouse*, Case No. 3:15-cv-05421-RS(KAW), 2017 WL 836943, at *2 (N.D. Cal. Mar. 3, 2017) ("Plaintiffs are not necessarily required to make a prima facie showing in order to obtain information for the putative class.").

Finally, "[t]he Supreme Court has recognized the importance of permitting class counsel to communicate with potential class members for the purpose of gathering information, even prior to class certification." *Guzman v. Chipotle Mexican Grill, Inc.*, Case No. 17-cv-02606-HSG (KAW), 2018 WL 6092730, at *2 (N.D. Cal. Nov. 21, 2018) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102-03 (1981). *See also Vinole*, 571 F.3d at 942; *Doninger*, 564 F.2d at 1313. Concerning the identity of the putative class members, district courts in this Circuit have often found that "[a]s a general rule, before class certification has taken place, all parties are entitled to equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties." *Wiegele v. FedEx Ground Package Sys.*, No. 06-CV-01330-JM(POR), 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007) (quoting *Koo v. Rubio's Restaurants, Inc.*, 109 Cal.App.4th 719, 729 (2003)). For that reason, discovery of the putative class members' identifying

information is routinely allowed. *See, e.g., Artis*, 276 F.R.D. at 352 ("The disclosure of names, addresses, and telephone numbers is a common practice in the class action context."); *Putman v. Eli Lilly & Co.*, 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) ("[I]t seems to the Court that contact with [class members] could well be useful to the plaintiff to determine, at minimum, the commonality and typicality prongs of Rule 23.").

### III. DISCUSSION

#### A. Putative Class Member Information is Relevant and Subject to Pre-Certification Discovery

Interrogatory Nos. 1 and 3 seek the identification and quantification of the number of all persons who completed a FCRA Consent Form containing an "authorization and liability release clause" at any time from December 11, 2013 to the present. (Doc. 48 at 5, 16.) Interrogatory Nos. 2 and 5 seek the same information for all persons who were the subject of a consumer report procured or caused to be procured by Circle K at any time from December 11, 2013 to the present. (*Id.* at 14, 23–24.) Taken together, these interrogatories serve to identify the alleged putative class. Circle K contends that Plaintiff is not entitled to this discovery because he cannot meet his prima facie burden of demonstrating that he is a typical class member and/or adequate representative for the class he seeks to represent. (*Id.* at 4, 7, 11, 12, 13.) Specifically, Circle K asserts that Plaintiff lacks standing, both under Article III and to challenge the enforceability of arbitration agreements containing class action waivers that some class members purportedly signed (but he did not). (*Id.* at 8–10, 12–14.) Circle K further resists discovery on grounds that because Plaintiff filed this lawsuit within two years of discovering the alleged violation of his FCRA rights, he cannot exercise the FCRA's five-year statute of repose. (*Id.* at 11, 22–23.)

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows discovery of any matter that is relevant to any party's claim and defense and non-privileged. Fed. R. Civ. P. 26(b)(1). The Court finds, over Circle K's objections (*see* Doc. 48 at 5, 15, 16, 24), that the information requested by these interrogatories concerning the identity of the putative class members—even those who may have signed an arbitration agreement—is directly related to the subject matter of the litigation and is reasonably calculated to lead to the discovery of admissible evidence. *See Sansone v.*

*Charter Commc'ns, Inc.*, Case No. 17-cv-01880-WQH-JLB, 2019 WL 460728, at *8–9 (S.D. Cal. Feb. 6, 2019) (finding contact information of putative class members that had signed arbitration agreement relevant because "[b]y communicating with putative class members, Plaintiffs will be able to gather information related to the enforceability of the arbitration agreement, which may be an issue during the certification stage") (citing *Adamov v. Pricewaterhouse Coopers LLP*, No. 2:13–cv–01222–TLN–AC, 2017 WL 6558133 at *4 (E.D. Cal. Dec. 22, 2017)). *See also Urena v. Cent. California Almond Growers Assn.*, Case No. 1:18-cv-00517-LJO-EPG, 2019 WL 2390042, at *6 (E.D. Cal. June 6, 2019). This holding comports with the general rule that before class certification has taken place, parties are entitled to equal access to persons who potentially have an interest in the subject of the action, but who are not yet parties. *See Wiegele*, 2007 WL 628041, at *2 (internal citations omitted); *see also Gulf Oil Co.*, 452 U.S. at 101–02.

Circle K contends, citing *Urena*, that because Plaintiff cannot provide a "colorable explanation" as to why Circle K's arbitration agreements are unenforceable, he is not entitled to contact information relating to individuals who signed such arbitration agreements. While the Court in *Urena* did look to whether the plaintiff made a "colorable argument" regarding the enforceability of the arbitration agreements at issue in considering whether discovery of all putative class members' information was appropriate, it also considered "whether the enforceability of the arbitration agreements will be in dispute during the class certification stage." 2019 WL 2390042, at *5. Other cases, including those on which *Urena* relies, have similarly permitted discovery of information for all putative class members where the plaintiff has presented a "colorable argument that the validity of the agreement will be at issue at the certification stage." *See Adamov*, 2017 WL 6558133 at *3. *See also Sansone*, 2019 WL 460728, at *9 ("By communicating with putative class members, Plaintiffs will be able to gather information related to the enforceability of the arbitration agreement, *which may be at issue during the certification stage*.") (emphasis added). Here, Plaintiff has made a "colorable argument" that the enforceability of the arbitration agreements will be at issue, as it appears undisputed that Circle K intends to defend against class certification by contending that class members signed binding arbitration agreements with class waivers. (*See* Doc. 48 at 7.)

1    Circle K's other arguments either go to the ultimate merits of Plaintiff's motion for class
2    certification, *see id.* at 11–14, 22–23, or urge reconsideration of this Court's order denying Circle
3    K's summary motion, *see id*. at 8–10. For example, Circle K contends that because Plaintiff's
4    claims will not be typical of, or he will not be able to represent adequately under Rule 23 those
5    putative class members who have signed arbitration agreements and/or who are subject to the
6    FCRA's five-year statute of repose, he is not entitled to identifying information for those putative
7    class members. (*See id.* at 8–10, 11–14, 22–23.) This contention is unavailing. Without deciding
8    the issue, the Court notes that a prima facie showing that class certification is appropriate under
9    Rule 23 is not necessarily required before authorizing pre-certification discovery, s*ee Kaminske*,
10   2010 WL 5782995 at *2; *Robinson,* 2017 WL 836943, at *2, and courts routinely permit
11   precertification discovery on issues like typicality, commonality, and adequacy if it would
12   substantiate the class allegations, *see, e.g., Kilbourne v. Coca-Cola Co.*, Civil No.14cv984 MMA
13   (BGS), 2015 WL 10943611, at *5 (S.D. Cal. Jan. 13, 2015).

14   Here, it appears Circle K seeks to litigate Rule 23 class certification prematurely. While its
15   arguments regarding typicality and/or adequacy may eventually prove convincing, they are
16   premature given that discovery is still ongoing and no motion for class certification has yet been
17   filed. *See Doherty v. Comenity Capital Bank & Comenity Bank*, Case No.: 16cv1321-H-BGS, 2017
18   WL 1885677, at *4 (S.D. Cal. May 9, 2017). Circle K appears to have conflated these issues—
19   "even if Plaintiff[s'] claims may be ultimately found atypical when the Court rules on [a] motion
20   for class certification, that does not impact Plaintiff's right to discover relevant information now
21   during the pre-certification discovery period." *Haghayeghi v. Guess?, Inc.*, 168 F. Supp. 3d 1277,
22   1279–80 (S.D. Cal. 2016). *See also Brum v. MarketSource, Inc.*, No. 2:17-CV-241-JAM-EFB,
23   2018 WL 3861558, at *3 (E.D. Cal. Aug. 14, 2018) ("The issue of whether an individual who
24   signed an arbitration agreement should be excluded from the class will need to be addressed on a
25   motion for class certification, not a discovery motion. Accordingly, plaintiffs should be permitted
26   to discover information regarding all class members, including those that signed an arbitration
27   agreement.")

28   As the propriety of class certification is yet to be determined in this case, the Court declines

to limit pre-certification discovery based on Circle K's assertions, unsubstantiated by evidence at this stage, that some unspecified number of putative class members (a) are subject to arbitration agreements with class action waivers, (b) can exercise the FCRA's five-year statute of repose period, and/or (c) suffered no injury-in-fact. Put another way, the Court will not attempt to predict whether Plaintiff's claims will ultimately be found atypical or he will ultimately be found to be an inadequate class representative. Nor will the Court revisit, in the context of a discovery motion, its previous finding that Plaintiff has established Article III standing. (*See* Doc. 36 at 6–13.) At this stage, the Court's assessment shall be limited to whether Plaintiff has demonstrated that the information sought is relevant to its preparation for his motion for class certification, *see Manolete*, 767 F.2d at 1424, which the Court finds in the affirmative.

**B.     Circle K Has Not Shown Undue Burden or that Sampling is Warranted**

As discussed above, the discovery that Plaintiff seeks is relevant. Furthermore, the requested discovery is not "unreasonably cumulative or duplicative" and cannot "be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Thus, the burden is on Circle K to demonstrate that the discovery is unduly burdensome. *Pham v. Wal–Mart Stores, Inc.*, No. 2:11–cv–01148–KJD–GWF, 2011 WL 5508832, at *3 (D. Nev. Nov. 09, 2011) (citing *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 2:05–cv–01318–BES–GWF, 2006 WL 3149362, at *9 (D. Nev. Nov. 1, 2006)). To satisfy this burden, Circle K "must provide sufficient detail regarding the time, money and procedures required to produce the requested documents." *Id*. The fact that production of documents will be time consuming and expensive is not ordinarily a sufficient reason to refuse to produce material if the requested material is relevant and necessary to the discovery of admissible evidence. *Pham*, 2011 WL 5508832, at *3 (citing *In re Toys "R" Us–Delaware, Inc. (FACTA) Litigation*, No. ML 08-1980 MMM (FMOx), 2010 WL 4942645, at *6 (C.D. Cal. July 29, 2010)).

Circle K claims it would bear an undue burden because production of the requested discovery would "require it to engage a third-party auditor to analyze files relating to hundreds of thousands of people (2-year statute of limitations implicates in excess of 175,000 current and

former employees) because there was no uniform FCRA form used." (Doc. 48 at 23.) Yet, despite a twenty-nine-page joint statement, Circle K did not present any *evidence* to substantiate this claim. *See e.g., Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable). *See also Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 301–02 (S.D. Cal. 2015). Even assuming, however, Circle K's representations are completely accurate, Plaintiff's interrogatories are not overly burdensome. *See Lindell v. Synthes USA*, No. 1: 11–cv–02053–LJO–BAM, 2013 WL 3146806, at *7 (E.D. Cal. June 18, 2013) ("The fact that Defendants do not segregate the data in the precise manner it is requested and would be required to manually review some of the data entries does not make Plaintiff's requests inaccessible 'because of undue burden or cost.'") Circle K acknowledges that it has the ability to collect the "files" containing information for employees hired during the five-year FRCA limitations period, but claims that such information is "beyond the scope of this [a]ction." (Doc. 48 at 22.) As set forth above, the Court disagrees, and finds this information highly relevant to Plaintiff's burden of establishing the requirements of Rule 23 at the class certification stage.[1]

With respect to Circle K's request to limit production of the information requested to "proportional sampling" that "does not exceed contact information for more than 500 putative class members" (*see id*. at 12), it has not shown that sampling is warranted in this case. While Circle K asserts that it has hired "in excess of 175,000 people" during the two year period prior to Plaintiff filing this lawsuit, it is unknown, even approximately, how many of those people actually fall within the putative class: that is, who completed Circle K's FCRA Consent Form (containing a liability release) and who were the subject of a consumer report procured or caused to be procured by Circle K. Without this information, the Court cannot conclude that the actual putative class is sufficiently large such that sampling would be appropriate. *Cf. Harris v. Best Buy Stores, L.P.*, Case No. 4:17-cv-00446-HSG(KAW), 2017 WL 3948397, at *3-4 (N.D. Cal. Sept. 8, 2017) ("Given the large size

---

[1] Plaintiff contends that class size information "will assist [him] in proving numerosity . . . ." (Doc. 48 at 18.) While Circle K points out, correctly, that "it is unnecessary to know the exact number of putative class members at this precertification stage" (*see id*. at 23), the point is moot, as the Court has already found that that production of each putative class member's identifying information—which would necessarily include the ***total number*** of those class members—is appropriate.

10

1  of the putative class [10,000], the Court finds that the 500 employees previously offered by Defendant is appropriate."); *Guzman*, 2018 WL 6092730, at *3 ("Given the large size of the putative class [43,000], the Court finds that a sample of 2,000 individuals is appropriate.").

**C.  The Protective Order is Sufficient to Protect Class Members' Privacy Rights**

Federal courts recognize a general right to privacy that can be raised in response to discovery requests. *Dowell v. Griffin*, 275 F.R.D. 613, 617 (S.D. Cal. 2011); *Artis v. Deere & Co.*, 276 F.R.D. 348, 352–53 (N.D.Cal.2011) (citing *Wiegele*, 2007 WL 628041, at *2). However, the right of privacy is not an absolute bar to discovery. The resolution of a privacy objection requires a balancing of the need for the particular information against the claimed privacy right. *See Artis*, 276 F.R.D. at 352–53 ("Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.' "). In class action suits, the disclosure of names, addresses, and telephone numbers is commonly allowed, because such disclosure "does not involve revelation of personal secrets, intimate activities, or similar private information, which have been found to be serious invasions of privacy." *Artis*, 276 F.R.D. at 353 (citing *Khalilpour v. CELLCO Partnership*, No. C 09-02712 CW (MEJ), 2010 WL 1267749, at *3 (N.D. Cal. Apr. 1, 2010)).

Circle K insists that, since Plaintiff's discovery requests seek private information about Circle K's employees, it should not be compelled to produce contact information until the parties "provide a *Belaire-West* opt-out notice procedure to putative class members whose contact information Circle K may be required to produce."[2] (Doc. 48 at 14.) The Court finds, however, that ordering the implementation of a *Belaire-West* procedure is not necessary in this case, as any privacy concerns implicated in producing such information will be adequately addressed by the

---

[2] This procedure comes from *Belaire–West Landscape Inc. v. Superior Court*, 149 Cal. App. 4th 554 (2007). In that case, the court acknowledged that "[t]he contact information for . . . current and former employees deserves privacy protection." *Id.* at 561. In order to protect employee privacy, the court adopted an opt-out procedure, whereby employees would receive notice of the putative class action and the fact that the plaintiffs were seeking their personal contact information. *Id.* at 562. Employees could send written notice that they do not want their contact information shared with the plaintiffs' attorneys. Federal courts have adopted the *Belaire-West* opt-out notice procedure in employment class actions. *See Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 512 (C.D. Cal. 2011); *Murphy v. Target Corp.*, No. 09cv1436–AJB (WMc), 2011 WL 2413439, at *4 (S.D. Cal. Jun. 14, 2011).

11

parties' stipulated protective order, which the Court entered on January 27, 2020, *see* Doc. 43. *See Austin v. Foodliner, Inc.*, Case No. 16-cv-07185-HSG (DMR), 2018 WL 1168694, at *2 (N.D. Cal. Mar. 6, 2018) (refusing to require a *Belaire-West* notice where "pre-certification discovery of putative class members' confidential [contact] information subject to a protective order); *Salgado v. O'Lakes*, No. 1:13–CV–0798–LJO–SMS, 2014 WL 7272784, at *12–13 (E.D. Cal. Dec. 18, 2014) (finding a standing protective order is "sufficient to protect the limited disclosure of [class members' contact] information and a *Belaire* opt-out protocol is unnecessary."); *Marsikian v. Mercedes-Benz USA, LLC*, No. CV 08-4876 AHM (FMOx), 2009 WL 10673466, at *2 (C.D. Cal. Aug. 13, 2009) ("[T]he court is persuaded that a protective order is sufficient to protect the class members' state law third-party privacy rights (i.e., an opt-out letter or notice is not required) . . . .") Additionally, as stated above, the requested information is highly relevant to Plaintiff's claims in this litigation. Consequently, Plaintiff's need for the requested information significantly outweighs Circle K's employees' privacy rights in the information. *See Artis*, 276 F.R.D. at 353.

**D.     The Court Shall Modify the Case Schedule**

Plaintiff's pending motion is not solely a "motion to compel," and also seeks a continuance of the class certification discovery and filing deadlines by 90 days to accommodate the production of the requested discovery. (*See* Doc. 47; *see also* Doc. 48 at 26–27.) A scheduling order may be modified upon a showing of good cause. Fed. R. Civ. P. 16(b). Good cause exists when the moving party demonstrates he cannot meet the deadline despite exercising due diligence. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). The Court has broad discretion in granting modifications to the schedule. *See Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) ("District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" (citation omitted)).

Here, there is good cause to modify the scheduling order.[3] Plaintiff has been diligent in his

---

[3] In addition to arguing an absence of good cause, Circle K opposes Plaintiff's request for continuance of class deadlines because it was joined in a discovery motion brought under the Court's Local Rule 251 and not as a noticed motion under Local Rule 230. (*See* Doc. 48 at 27.) While Circle K is technically correct that Local Rule 251 is limited to motions seeking relief under Fed. R. Civ. P. 26 through 37 and 45, the Court in its discretion will nevertheless consider Plaintiff's request for continuance in ruling on his motion to compel. There is no prejudice to Circle K that would result, given that it was given notice of Plaintiff's request in the motion (*see* Doc. 47 at 5) and had an opportunity to respond (and, in fact, did respond, *see* Doc. 48 at 27–28) to that request.

12

efforts to obtain discovery and to meet the scheduling order deadlines. The interrogatories at issue were served on February 13, 2020, and Plaintiff promptly moved to compel further responses to this discovery less than two weeks later, once it became apparent that the parties had reached an impasse. (*See* Doc. 47 (filed February 25, 2020).) The parties have twice stipulated to extend the class certification discovery cutoff and briefing schedule: first to allow the parties to complete discovery following the Court's ruling on Circle K's motion for summary judgment, *see* Docs. 37 & 38, and next due to the unavailability of Circle K's corporate representative to sit for deposition. (*See* Docs. 44 & 45.) Thus, through no fault of his own, Plaintiff has been unable to obtain the discovery necessary to prepare his motion for class certification. Good cause being shown, *see* Fed. Civ. P. 16(b), and to accord Plaintiff effective relief for his Motion to Compel (particularly in light of the national, regional and local public health emergency posed by the coronavirus (COVID-19) outbreak, *see* General Orders Nos. 611–613), his request is granted, and the case schedule will be modified to continue the class certification discovery and briefing deadlines by 90 days.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's "Motion to Compel Further Responses to Plaintiff's Interrogatories and Requests for Production of Documents" (Doc. 47) is GRANTED, and Circle K shall produce information responsive to Interrogatory Nos. 1 and 2 (which necessarily includes the information called for by Interrogatory Nos. 3 and 5).[4] The Court declines to adopt Plaintiff's proposal that Circle K produce the requested discovery "by no later than ten days" following entry of this order. (*See* Doc. 48 at 28.) Instead, the parties are ORDERED to meet and confer to agree upon reasonable time frame and manner for production of the information, subject to the modified case schedule, set forth below.

It is further ORDERED that the case schedule (Doc. 45) is MODIFIED as follows:[5]

---

[4] Plaintiff also purportedly moves for further responses to requests for production (*see* Doc. 47); however, no requests for production were mentioned in the parties' Joint Statement (*see* Doc. 48.)

[5] As the Court enlarges the class discovery and certification deadlines in this case, Plaintiff's ex parte application for a continuance of these same deadlines due to the COVID-19 pandemic, filed March 27, 2020 (Doc. 50), is DENIED as MOOT.

13

1. The class certification discovery deadline shall be continued from April 9, 2020, to July 8, 2020.
2. The class certification motion filing deadline shall be continued from May 18, 2020, to August 17, 2020.
3. The class certification opposition brief filing deadline shall be continued from June 15, 2020, to September 14, 2020.
4. The class certification reply brief filing deadline shall be continued from June 29, 2020, to September 28, 2020.
5. The motion for class certification shall be heard on November 18, 2020, at 9:30 a.m., in Courtroom 7 before the Honorable Sheila K. Oberto, United States Magistrate Judge.
6. A status conference to set further scheduling dates is set for January 21, 2021, at 10:15 a.m. in Courtroom 7 before Magistrate Judge Oberto. Telephonic appearances are approved; all parties appearing telephonically shall call (888) 557-8511, access code 6208204# at the date and time for the conference. By no later than January 14, 2021, the parties shall file and email to skoorders@caed.uscourts.gov in MS Word format a report providing (a) dates agreed to by all counsel for all remaining deadlines and (b) an updated status of the case.

IT IS SO ORDERED.

Dated: **March 30, 2020**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE

14